IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                               Respondent,<br><br>            v.<br><br>ROBERTO ALEXANDER CRUZ-<br>YON,<br><br>                               Appellant. | No. 81418-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, A.C.J. — The State charged Roberto Alexander Cruz Yon[1] with rape of a child in the second degree and child molestation in the first degree. The State alleged and a jury found that Cruz Yon had raped N.G., his girlfriend's daughter, in 2019 and that, "on a specific date between on or about the 17th day of December, 2012 through on or about the 1st day of January, 2019," he had molested N.G. On appeal, Cruz Yon asserts that the evidence does not support his conviction for child molestation in the first degree and that his counsel was ineffective when they did not object to testimony of N.G.'s prior penetrative injuries. With regard to his sentence, Cruz Yon challenges the court's imposition of two community custody conditions, one prohibiting him from initiating or prolonging contact with minor children and another requiring that he disclose his offender status to all sexual partners.

---

[1] While the caption in this case refers to "Cruz-Yon" in conformity with the complaint filed by the State, it appears that the appellant's name is spelled Cruz Yon and we refer to him as such throughout the opinion.

Citations and pin cites are based on the Westlaw online version of the cited material.

Although N.G. contradicted her testimony regarding the instance of molestation that occurred prior to 2019, we take the evidence and all reasonable inferences in favor of the State and conclude that the evidence supported Cruz Yon's conviction for child molestation. In addition, the court properly admitted the testimony of N.G.'s prior penetrative injuries because it provided circumstantial evidence for the molestation charge. Accordingly, Cruz Yon's counsel was not ineffective when they failed to object to the evidence. Finally, the trial court did not abuse its discretion when it imposed crime-related community custody conditions. Therefore, we affirm Cruz Yon's judgment and sentence.

FACTS

Ibet Lucas Baez and Cruz Yon began seeing one another romantically in 2012, and they moved in together at that time. Lucas Baez had a daughter, N.G., from a previous relationship who was 12 years old in 2019. There were complications during N.G.'s birth. Specifically, N.G. contracted an infection, and the doctors told Lucas Baez it could affect N.G.'s brain function. When N.G. was 7 years old, Lucas Baez took her to a doctor who told her that N.G. had mental deficiencies. N.G. was placed in special education courses for all of her academics, having the reading comprehension level of a first grader when she was in sixth grade. In addition, N.G.'s teachers were concerned that N.G. was " 'not always aware of the manipulative nature of some of her peers' behavior,' " making her vulnerable. Lucas Baez testified that she told Cruz Yon about N.G.'s developmental deficiencies.

Cruz Yon acted as a parent for N.G., and N.G. called Cruz Yon "dad," even though he was not her natural father. Lucas Baez and Cruz Yon had three more children, a son, W.C.-Y., and twin daughters.

Lucas Baez worked at a chicken farm for two months at the end of 2016. During this time, Cruz Yon occasionally watched the children while Lucas Baez was at work. In mid-2017, she began working at a horse farm.

In 2019, Lucas Baez and the twin girls slept in their living room, Cruz Yon also slept in the living room in a portion separated by a curtain, and N.G. and W.C.-Y. slept in the same bedroom but in different beds. On June 12, 2019, while the children were asleep, Cruz Yon came to where Lucas Baez was sleeping with the twins and initiated sex. After intercourse, Lucas Baez went back to sleep but was woken up later by what she thought was a sound outside their home.

Lucas Baez testified that when she woke up, she went to the bathroom, and on her way back to bed, she saw N.G.'s bedroom door open. When she turned on the lights in N.G.'s bedroom, she saw Cruz Yon on top of N.G. with his pants and underwear around his knees. N.G. was undressed and "was face up, and he was on top of her." Lucas Baez testified that Cruz Yon asked her not to call the police.

Lucas Baez called her brother and sister-in-law, who arrived at the house shortly thereafter. Her sister-in-law called 911 and interpreted for Lucas Baez. At trial, Sergeant Jon Elton of the Marysville Police Department testified that he

3

spoke with Cruz Yon that evening and that Cruz Yon stated he did not want to be with Lucas Baez any longer so he "was just pretending to have sex with" N.G.

An ambulance transported N.G. and Lucas Baez to the hospital, where Kelly Irene Guzman, a forensic nurse examiner, performed a sexual assault examination on N.G. Guzman took a sample of a substance from N.G.'s vagina that Guzman stated was consistent with semen. The DNA (deoxyribonucleic acid) was consistent with Cruz Yon's. N.G. told Guzman that Cruz Yon had touched her private parts but had not done so before that evening. However, Guzman's examination indicated otherwise: Guzman testified at trial that N.G. had "notches," or transections, on her hymen that "show[ed] previous penetrative injury."

The State charged Cruz Yon with one count of rape of a child in the second degree and one count of first degree child molestation. Both counts included aggravating factors for N.G.'s known vulnerability. Count 2 stated that the charging dates were "on or about the 17th of December, 2012 through or on about the 1st day of January, 2019."

Trial began on March 2, 2020. At trial, the State offered evidence of N.G.'s prior hymen injury, to which Cruz Yon's counsel did not object. During N.G.'s testimony, N.G. was unresponsive to questions, saying that she could not remember, or that nothing happened, or that she did not want to talk about it. She also testified that she was shy and wanted to write down her answers. One written statement was that Cruz Yon touched her "private." But she also contradicted herself, testifying that no one had touched her "privates." In

4

addition, she testified that something happened with Cruz Yon in 2016. However, she could not or did not provide specifics, and her timeline was confused.

The jury found Cruz Yon guilty as charged, including the aggravating factors regarding N.G.'s vulnerability. With regard to his sentence, the trial court imposed the following community custody conditions: (1) "Do not initiate or prolong contact with minor children without the presence of an adult who is knowledgeable of the offense and has been approved by the supervising Community Corrections Officer" and (2) "Disclose sex offender status prior to any sexual contact."

Cruz Yon appeals.[2]

ANALYSIS

Sufficiency of the Evidence

Cruz Yon asserts that the State failed to prove the elements of first degree child molestation beyond a reasonable doubt. We disagree.

"Sufficiency review secures the fundamental protection of due process of law," which "requires that the State prove every element of a crime beyond a reasonable doubt." State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017).

---

[2] Cruz Yon moved to have the trial transcript and his attorney's brief translated to Spanish at public expense so that he could prepare a Statement of Additional Grounds for Review (SAG). We issued an opinion concluding that Cruz Yon was entitled to have the requested documents translated and to have his subsequent SAG translated to English. State v. Cruz-Yon, 20 Wn. App. 2d 1, 3, 498 P.3d 533 (2021). The documents were then translated, and on May 17, 2022, Cruz Yon's attorney filed a letter indicating that Cruz Yon would not file a SAG and the matter was ready for review. We now address the merits of his appeal.

And "[t]he purpose of the sufficiency inquiry is to 'ensure that the trial court fact finder rationally appl[ied] the constitutional standard required.'" State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014) (second alteration in original) (internal quotation marks omitted) (quoting State v. Phuong, 174 Wn. App. 494, 502, 299 P.3d 37 (2013)). We review a claim for insufficient evidence considering " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Johnson, 188 Wn.2d at 750-51 (internal quotation marks omitted) (quoting State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion)). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We review the sufficiency of the evidence de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

"A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). And "'[s]exual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

N.G. offered conflicting testimony about the incidents between her and Cruz Yon. For example, N.G. testified that, in 2016, Cruz Yon "'was touch me,'"

and "'He was touch in my body.'" In contrast, N.G. also testified that Cruz Yon had not touched her before the 2019 rape. And although N.G. testified that the first incident with Cruz Yon happened in 2016, N.G. also testified that it occurred when her mom worked with the horses, which was in 2017.

Notwithstanding N.G.'s inability to provide a clear date of the previous assault, circumstantial evidence of a penetrative injury that had occurred in the past showed that N.G. had experienced a penetrative injury before the 2019 incident. Specifically, even though Guzman could not testify to the precise date the injuries occurred, her testimony that N.G. had nonacute transections on her hymen provided circumstantial evidence of a past penetrative injury. And "[c]ircumstantial and direct evidence are to be considered equally reliable." State v. Cardenas-Flores, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). Thus, contrary to Cruz Yon's contention, a reasonable juror could reasonably infer that the nonacute penetrative injury occurred before N.G.'s birthday on February 24, 2019, even though Guzman could not testify to the precise date the injuries occurred. See State v. Powell, 62 Wn. App. 914, 917, 816 P.2d 86 (1991) ("Proof that [the defendant] with no caretaking function has touched the intimate parts of a child supports the inference that the touching was for the purpose of sexual gratification.").

In short, the State presented evidence that N.G. suffered a prior penetrative injury, which occurred in the charging period, i.e., before January 1, 2019. We conclude that despite some contradictory testimony by N.G., the evidence was sufficient to support the conviction for first degree child molestation

7

when viewed in the light most favorable to the State. Specifically, the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Accordingly, the evidence was sufficient to convict Cruz Yon of child molestation in the first degree for an incident occurring before the 2019 rape.

Cruz Yon disagrees and relies on Powell for the proposition that "[w]here the evidence shows touching over clothes, some additional evidence of sexual gratification is required." In Powell, Harry Normal Powell appealed his conviction for first degree child molestation. 62 Wn. App. at 915. Powell had touched a child's "bottom" and her "'front'" over her underwear but under her skirt. Powell, 62 Wn. App. at 916. The court concluded that the "fleeting" touching of the child over her clothes was insufficient to satisfy the State's burden of proving sexual gratification beyond a reasonable doubt. Powell, 62 Wn. App. at 917-18. The court held that where a defendant does not touch the child beneath their clothing, evidence of sexual gratification is necessary. Powell, 62 Wn. App. at 917.

Powell is not analogous because, as discussed above, there is evidence that Cruz Yon touched N.G. underneath her clothing based on her testimony and the circumstantial evidence. Thus, the State did not have to provide additional evidence of sexual gratification.

For these reasons, the State met its burden to show that Cruz Yon was guilty of first degree child molestation.

Ineffective Assistance of Counsel

Cruz Yon claims that his counsel was ineffective when they failed to object to admission of his prior bad acts. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). We engage in a two-step inquiry to determine if a defendant received ineffective assistance of counsel. First, the defendant must show that "defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Second, the defendant must show that "defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." McFarland, 127 Wn.2d at 335. "Ineffective assistance of counsel is a fact-based determination." State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011). We review ineffective assistance claims de novo. Brett, 142 Wn.2d at 873.

With regard to the first step of the inquiry, counsel's conduct is presumed effective and is not deficient if it "can be characterized as legitimate trial strategy or tactics." State v. Kyllo, 166 Wn.2d 856, 862-63, 215 P.3d 177 (2009). And "[w]here a claim of ineffective assistance of counsel rests on trial counsel's failure to object, a defendant must show that an objection would likely have been

9

sustained." State v. Fortun-Cebada, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Here, despite Cruz Yon's assertion to the contrary, he cannot show that the objection likely would have been sustained. In particular, the evidence of N.G.'s prior penetrative injury pertained to count 2 and provided circumstantial evidence that Cruz Yon touched N.G. prior to the 2019 rape and during the charging period.[3] As discussed above, although Guzman could not provide a specific date for N.G.'s nonacute injuries, a reasonable jury could find that the injuries occurred prior to N.G.'s twelfth birthday. That is, because N.G. testified that Cruz Yon touched her "inside" her body in 2016 or 2017, a reasonable juror could find that the penetrative injury resulted from that incident. Thus, the evidence was highly relevant to the crime charged and not evidence of prior bad acts. And because of its high relevance to count 2, Cruz Yon's counsel chose to attack the evidence by alleging that it was caused by something other than penetration. This tactical decision by Cruz Yon's counsel did not fall below an objective standard of reasonableness, and Cruz Yon fails to show that his counsel's performance was deficient.

Community Custody Conditions

Cruz Yon contends that the trial court erred when it imposed multiple community custody conditions. We disagree.

---

[3] Because the evidence was relevant to count 2, Cruz Yon's assertion that the evidence was evidence of prior bad acts under ER 404(b) is without merit.

A crime-related prohibition "prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).  The sentencing court may impose conditions that restrict a defendant's constitutional rights provided those conditions are imposed sensitively.  State v. Bahl, 164 Wn.2d 739, 757, 193 P.3d 678 (2008).  Limitations on constitutionally-protected conduct must be "narrowly tailored and directly related to the goals of protecting the public and promoting the defendant's rehabilitation."  Bahl, 164 Wn.2d at 757.

We review a trial court's imposition of crime-related conditions for abuse of discretion.  State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).  A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds.  State v. Sassen Van Elsloo, 191 Wn.2d 798, 807, 425 P.3d 807 (2018).

As an initial matter, the State asserts that we should not address Cruz Yon's challenge to his community custody conditions because he did not object below.  However, "Washington courts . . . will consider some sentencing errors that are raised for the first time on appeal, including some claims challenging conditions of community custody."  State v. Casimiro, 8 Wn. App. 2d 245, 249, 438 P.3d 137, review denied, 193 Wn.2d 1029 (2019).  Thus, we review the merits of Cruz Yon's challenges.

Here, the court imposed the following challenged conditions: (1) "Do not initiate or prolong contact with minor children without the presence of an adult who is knowledgeable of the offense and has been approved by the supervising

11

Community Corrections Officer" and (2) "Disclose sex offender status prior to any sexual contact." The court did not explain its reasoning behind the imposition of these conditions. However, there "was no reason for the trial court or the parties to explain the relationship between the crime and the subsequent conditions." Casimiro, 8 Wn. App. 2d at 249. Rather, the relationships between the two conditions and Cruz Yon's convictions are readily apparent and do not require further explanation.

With regard to the first condition, a blanket prohibition on contact with all minors, including a defendant's children, can be appropriately tailored to the defendant's crime. State v. Corbett, 158 Wn. App. 576, 599-600, 242 P.3d 52 (2010). We previously upheld imposition of the same condition where the defendant, Edwin Corbett, raped his stepdaughter. Corbett, 158 Wn. App. at 581-82, 586. Corbett asserted that the State failed to show that the rape of his stepdaughter provided a sufficient reason for prohibiting his contact with his children. Corbett, 158 Wn. App. at 597. But we affirmed the community custody condition, concluding that "[t]he fact that Corbett sexually abused a child family member . . . provides the necessary support to impose a prohibition on contact with his own children." Corbett, 158 Wn. App. at 599-600. Similarly, here, Cruz Yon raped and molested N.G., a child living in his home whom he considered his daughter. Thus, the trial court did not abuse its discretion when it prohibited Cruz Yon's contact with all children without the presence of an adult.

With regard to the second condition, we have upheld conditions imposed on a sex offender's relationships even where the defendant's actions were

12

committed against a child. Specifically, we upheld the same community custody condition imposed on Cruz Yon for the defendants in State v. Autrey. See 136 Wn. App. 460, 468, 150 P.3d 580 (2006) (concluding that, where the two defendants were convicted of crimes of sexual violence against children, the sentencing court did not err when it placed conditions regarding adult sexual contact). Therefore, the trial court did not abuse its discretion when it imposed a condition requiring Cruz Yon to disclose his sexual offender status prior to engaging in sexual relations with other consenting adults.

Cruz Yon disagrees and relies on two cases, In re Pers. Restraint of Rainey, 168 Wn.2d 367, 229 P.3d 686 (2010), and State v. Ancira, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001), to support his assertion that the trial court must provide a reason when imposing a condition that limits an individual's fundamental right to parent. In Rainey, the sentencing court imposed a lifetime no-contact order preventing Shawn Rainey's contact with his daughter. 168 Wn.2d at 371. A jury had convicted Rainey of first degree kidnapping after Rainey disappeared with his daughter but the sentencing court did not provide a reason for the duration of the no-contact order. Rainey, 168 Wn.2d at 370, 381-82. Therefore, our Supreme Court remanded so that the court could address the parameters of the no-contact order. Rainey, 168 Wn.2d at 382.

Similarly, in Ancira, following his guilty plea for felony violation of a domestic violence no-contact order, the sentencing court imposed a five-year no-contact order prohibiting James Ancira from contacting his wife, Andrea Valle, and their children. 107 Wn. App. at 652-53. On appeal, "[w]e conclude[d] that

13

the State . . . failed to demonstrate that this severe condition was reasonably necessary to prevent the children from witnessing domestic violence." Ancira, 107 Wn. App. at 654.

Here, Cruz Yon's behavior directly injured his stepchild. Therefore, the sentencing court was not required to address the parameters of the condition or provide a reasoning for the scope. The reason is clear: Cruz Yon raped and molested a child whom he knew was particularly vulnerable and who considered him to be her father. Accordingly, the sentencing court did not abuse its discretion when it imposed the two challenged crime-related conditions.

We affirm.[4]

_Smith, J._

WE CONCUR:

_Dwyer, J._

---

[4] This case was originally assigned to a three-judge panel that included Judge Chun, who reviewed and discussed the case. Judge Chun has since been appointed to the United States District Court for the Western District of Washington.